PEOPLE v GENOVESE

CRIMINAL LAW—CONTROLLED SUBSTANCES—FORGERY—DEFENSES.
  The fact that a pharmacist to whom a forged prescription was
  presented knew, or had reason to know, that the prescription
  was forged and nonetheless filled it is no defense to a charge of
  obtaining a controlled drug by means of a forgery in violation
  of the Controlled Substances Act; there is no requirement that
  the supplier of the proscribed substance be deceived by the
  forged prescription (MCLA 335.343[1][c]).

Appeal from Van Buren, David Anderson, Jr., J.
Submitted Division 3 March 13, 1974, at Detroit.
(Docket No. 17279.) Decided May 31, 1974.

Ruby Genovese was convicted of obtaining a
controlled substance by means of a forged prescrip-
tion. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William C. Buhl,*
Prosecuting Attorney, and *Richard L. Halpert,*
Chief Assistant Prosecutor, for the people.

*Warren D. Sundstrand,* for defendant.

Before: J. H. GILLIS, P. J., and QUINN and
O'HARA,* JJ.

PER CURIAM. So far as we are able to determine
from the briefs submitted and our independent

REFERENCES FOR POINTS IN HEADNOTE
36 Am Jur 2d, Forgery §§ 4, 7.
Procuring signature by fraud as forgery, 11 ALR3d 1074.
  * Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

research this is a case of first impression in this state. Neither is our attention called to any opinion from a sister state squarely in point. This is understandable since it is a prosecution under a provision of the new and relatively recently adopted Controlled Substances Act. MCLA 335.301 *et seq;* MSA 18.1070(1) *et seq.* It provides as here involved:

"It is unlawful for any person knowingly or intentionally:

\*    \*    \*

"(c) To acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge." MCLA 335.343(1)(c); MSA 18.1070(43)(1)(c).

The facts are not in dispute. The substance involved comes within the terms of the act. The defendant presented a prescription to a pharmacist purported to have been signed by a duly licensed physician. The prescription was in fact signed by the defendant.

The defense we must examine is that the pharmacist knew, or had reason to know, that the prescription was forged, yet nonetheless filled it.

This, defendant argues, in legal effect elevated the offense from an attempt to obtain a controlled substance to having obtained a controlled substance.

In support of this premise defendant argues further that the supplier of the proscribed substance must have been deceived by the proffered forged prescription.

The trial judge rejected that defense. Over objection properly preserved he charged the jury as follows:

"Only forgery is here involved. If you find beyond a reasonable doubt that defendant knowingly obtained Obedrin-La by means of a forged prescription, your verdict should be guilty as charged.

"I charge you that it is no defense of this charge that the person supplying the drug or drugs was aware of the forgery. If it appears that the drug would not have been delivered if the prescription had not been presented, your verdict in this case should be a verdict of guilty as charged."

Because the viability of this defense is at issue, we set forth also the preliminary examination[1] testimony of the pharmacist to whom the forgery was presented, as elicited on cross-examination.

"*Q.* Mr. Gard—

"*A.* Yes.

"*Q.* Gard, I guess it is, when this prescription was handed to you were you any way suspicious in any way that there was anything wrong?

"*A.* Yes I was.

"*Q.* Um, isn't it common practice when you have this type of situation that you call the doctor to confirm that this is the proper prescription?

"*A.* Well this type of drug I think we're all suspicious of at first. I did call the doctor after I filled the prescription and he couldn't remember this particular name and I told him I would mail him the prescription as I did and he would check—

"*Q.* Why didn't you call him before you filled the prescription?

"*A.* Well to tell you the truth because I thought I would lose the prescription. It's no good for any type of legal matter unless it's been filled and the medication has been presented to the party. In other words, I would scare off the person handing me the prescription. Plus I wasn't absolutely positive that there was anything wrong.

---

[1] Because of the nature of the single issue raised by defendant, no trial transcript was supplied as the facts are not in dispute.

"*Q.* But you were suspicious.

"*A.* Yes I was.

"*Q.* Couldn't you have called the doctor and found out that it was an improper prescription?

"*A.* Well, I did call him. I could have called him then, but I'd probably gotten the same answer that he doesn't recall this particular person and that he didn't know if it was good or not good. He asked me to check other prescriptions from my file with his signature, but I don't get very many from Baggerly, if any, and I couldn't do that.

"*Q.* You weren't able to do that.

"*A.* No.

"*Q.* So in a way what you were doing is, you were hoping that it was a bad prescription so that you could catch a person in trying to get drugs with a false prescription.

"*A.* Yes.

"*Q.* In other words she really didn't deceive you, you deceived her also, is this correct?

"*A.* Well I—I'm not sure what you mean.

"*Q.* Well in the sense that if you really didn't believe this was a valid prescription and you filled it anyway, you were doing it so that you could nail her for doing it, is that correct?

"*A.* That's true.

"*Mr. Buhl:* Well I'll object to the question, your Honor, phrased in a manner which said he really didn't believe it was valid, he said he wasn't sure.

"*The Court:* The objection is sustained.

"*Mr. Sundstrand:* Your Honor, he previously stated that he was afraid he would lose the prescription in a sense that if he called the doctor she wouldn't go ahead with it. Now this shows that he had a very strong suspicion that this was an invalid prescription and yet he went ahead and filled it. That's why I believe that's a proper question.

"*The Court:* Yes, all right, the witness has also testified that though he was suspicious, he wasn't sure and the objection's sustained. The question is argumentative."

We reject the defense. We do so first because the statute does not speak to the responsibility of the pharmacist under these conditions. Clearly what the defendant did is exactly what the statute prohibits. Defendant did in fact obtain the controlled substance by means of a forgery. We could stop here and merely affirm without any discussion of the implications implicit in the defense raised. We feel, however, a grave obligation to include in this opinion some comments upon what we see as likely results of holding to the contrary.

If there are obligations to devolve upon a pharmacist to become, in effect, an enforcement arm of the uniform act we feel that imposition is a matter for the deliberate legislative process with its attendant opportunity for public hearings, compilation of informed opinion, and other pragmatic considerations. We would regard it an invasion of that process for us by judicial fiat to impose the difficult task of detecting and challenging forged or suspected forged prescriptions upon licensed pharmacists. It is hardly to be expected that all pharmacists can become chirographers required to be alert to a forgery of the signature of every issuing physician.

If further obligations are to be imposed upon pharmacists under this act they must be imposed by the Legislature. The wisdom, necessity or desirability thereof is not by constitution entrusted to us.

For the reasons herein detailed the conviction is affirmed.